**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALFREDO ABREGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15 C 1281 |
| ) | |
| DAVID J. SHULKIN, Secretary of ) | |
| Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Alfredo Abrego has sued his former employer, the Secretary of Veterans Affairs

(VA),[1] alleging race and sex discrimination, retaliation for prior complaints regarding

discrimination, and a hostile work environment in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).  The Secretary has moved for

summary judgment.  For the reasons stated below, the Court grants the Secretary's

motion.

### Background

Abrego is a Hispanic male who worked as a dental assistant in a North Chicago

VA dental clinic within Captain James A. Lovell Federal Health Care Center (Lovell

FHCC) from June 2011 through December 2014.  Abrego initially was assigned to Dr.

Strampe, one of the clinic's dentists.  Abrego came to believe that all the female dental

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), David J. Shulkin, the current
Secretary of Veterans Affairs, is substituted as defendant for former Secretary Robert A.
McDonald.

assistants received better treatment and that he was being discriminated against by Dr. Strampe and others based on his gender and race.

In August 2012, Abrego filed an equal employment opportunity (EEO) complaint alleging race and gender discrimination related to a hostile work environment. In this complaint, Abrego identified a number of incidents that he believed to be discriminatory:

(1) On August 9, 2011, Dr. Strampe wanted to work with a female assistant instead of Abrego;

(2) On August 10, 2011, Dr. Strampe was "short tempered" with Abrego over the computer;

(3) On August 11, 2011, Dr. Strampe continued to be short tempered with Abrego in the operatory room;

(4) On August 12, 2011, Abrego was "harassed" by Dr. Strampe;

(5) On August 15, 2011, Dr. Strampe and department head Dr. Bidny "ambushed" Abrego with "lies/false allegations";

(6) On August 16, 2011, Dr. Bidny told Abrego that he could be terminated for attitude;

(7) On September 9, 2011, Abrego was notified that he had not completed certain training;

(8) On October 8, 2011, Dr. Strampe was "banging" on the bathroom door looking for Abrego;

(9) On December 30, 2011, Dr. Strampe was short tempered with Abrego for requesting a "59";[2]

(10) On January 3, 2012, Dr. Strampe did not allow Abrego to defend himself when a patient insulted him;

(11) On January 20, 2012, Dr. Strampe again was short tempered with Abrego for invoking a "59";

(12) On January 26, 2012, Dr. Strampe and Dr. Bidny requested a meeting with Abrego, "ambushed [him] about the problems that were occurring," and Dr. Strampe left the meeting without answering any of Abrego's questions;

(13) On February 3, 2012, Abrego told Dr. Bidny that he was tired of having problems with Dr. Strampe and that he is "demanding for him to go to mediation";

(14) On February 7, 2012, Dr. Bidny informed Abrego that Dr. Strampe was quitting;

(15) On March 29, 2012, Abrego was reassigned to another dentist.

---

[2] Under the so-called "59-minute rule," staff is allowed to leave 59 minutes before quitting time if it will not adversely affect patient care. The rule is most commonly used on a Friday before a three-day weekend or in inclement weather situations. *See* Def.'s Statement of Undisputed Material Facts (SUMF), Ex. 2 (Strampe Dep.), 60:11-61:12.

Abrego refused to sign Dr. Strampe's mid-evaluation of him because it contained "false allegations." Dr. Strampe showed more respect to his new female assistant, and he took his female assistant and a volunteer on ward exams when he never took Abrego;

(16) On March 29, 2012, Abrego emailed EEO Program Manager/ADR Coordinator Nancy Gember about the discrimination against him, but she did not respond for a month. When she did respond, she was short tempered. When Abrego emailed Patrick Sullivan about this, he never heard back;

(17) On March 30, 2012, Abrego tried to set up a meeting with Captain Oxford, the Associate Director of Dental Services, to discuss his evaluation, but Oxford's senior chief "seemed to try to discourage" him, wanting Abrego to talk to Dr. Fredrickson, Assistant Director of Dental Services, instead;

(18) On April 4, 2012, Abrego's new supervising dentist, Dr. Hartel, informed Abrego that Dr. Frederickson "was trying to influence him" by using Dr. Strampe's prior mid-evaluation for his September 2012 evaluation; and

(19) On June 28, 2012, Dr. Strampe agreed to attend mediation after Abrego's third attempt.

Def.'s SUMF, Ex. 28. Abrego filed another EEO complaint in February 2014, this time alleging retaliation. In support of this allegation, Abrego stated that he received a "fully successful" rating instead of an "exceptional" one in October 2013, received a two-week suspension without pay for recording statements by a supervisor, and his supervisors illegally accessed his medical records. Def.'s SUMF, Ex. 29. The VA Office of Employment Discrimination Complaint Adjudication consolidated the August 2012 and February 2014 complaints and ultimately determined that Abrego failed to prove that he had been discriminated against based on race, sex, or retaliation. Am. Compl., Ex. A at 32.

In October 2014, Abrego filed another EEO complaint, in which he alleged the following:

(1) On June 4, 2014, dental assistant supervisor Pietrzyk harassed Abrego for coming in late;

(2) On June 4, 2014, Pietrzyk required Abrego to take personal leave to

participate in a VA-authorized teleconference;

(3) On June 5, 2014, Pietrzyk hassled Abrego because he had a meeting with his union representative during work hours;

(4) On June 5, 2014, Pietrzyk was "giving [Abrego] grief about everything," including his VA-authorized instruction of Team Stepps classes;

(5) On June 26, 2014, during Abrego's mandatory 15-minute break, Pietrzyk sent Abrego an email that she was looking for him;

(6) On June 30, 2014, Pietrzyk did not allow Abrego to be the "secondary" for a Basic Life Support class;

(7) On July 3, 2014, Abrego felt light-headed after donating blood and told Pietrzyk that he was going to seek medical attention. Pietrzyk called the health center to make sure Abrego was there;

(8) On July 8, 2014, Pietrzyk told Abrego that Dr. Fredrickson wanted him to stop instructing Team Stepps and Preventive Management of Disruptive Behavior (PMDB) classes;

(9) On July 10, 2014, Pietrzyk walked out of a meeting and blamed Abrego for it;

(10) On July 15, 2014, Pietrzyk did not allow Abrego to instruct a scheduled Team Stepps class even though other assistants could have filled in for him;

(11) On July 16, 2014, Pietrzyk "threatened" Abrego that he would be written up for the third time because he wanted union representation present at a meeting he was supposed to have with her;

(12) On August 6, 2014, Pietrzyk harassed Abrego for failing to put away the laundry although he was working with a dentist and had patients all day, while other employees were not working with dentists;

(13) On August 6, 2014, Pietrzyk issued Abrego a Letter of Inquiry[3] that contained "false allegations," because he was taking Pietrzyk to mediation;

(14) On August 7, 2014, Abrego's schedule for instructing Team Stepps and PMDB classes was monitored;

(15) On August 20, 2014, Pietrzyk sent an email claiming that Abrego was watching and intimidating other employees;

(16) On September 23, 2014, Pietrzyk claimed she did not know Abrego was teaching a Team Stepps class that day even though she previously received an email about it, and;

(17) On September 30, 2014, Abrego left the dental department because he needed medical attention. When Abrego returned, Pietrzyk told him that he should have notified her before leaving.

Def.'s SUMF, Ex. 31.

---

[3] A Letter of Inquiry is a formal request for information that can be used as evidence to support a proposed disciplinary action, but it is not a disciplinary tool "in and of itself." Def.'s SUMF, Ex. 13 (Dr. Holt Dep.), 9:13-9:23.

In November 2014, Abrego received a proposed removal letter that charged him with three counts each of "Inappropriate Conduct, including Conduct Unbecoming" and "Failure to Follow Instructions and to Carry Out Assigned Duties."  Def.'s SUMF, Ex. 24.[4]  Abrego responded in writing and orally to the proposed removal letter.  After reviewing the evidence file prepared by Human Resources as well as Abrego's response, the Director of Lovell FHCC, Dr. Stephen Holt, sustained the three "Inappropriate Conduct" charges and one "Failure to Carry Out Assigned Duties" charge and decided to remove Abrego from employment effective December 19, 2014.  Def.'s SUMF, Ex. 26.  There is no evidence that Dr. Holt was aware of Abrego's EEO activity beyond what Abrego himself noted in his response to the proposed removal.

In August 2015, the VA Office of Employment Discrimination Complaint Adjudication issued a final agency decision on Abrego's October 2014 EEO complaint, which it characterized as presenting allegations of "hostile workplace harassment, based on gender (male) and reprisal (prior EEO activity)."  Am. Compl., Ex. B at 4.  The August 2015 decision noted that Abrego had amended his complaint to include his removal, and it identified three additional allegations that Abrego had not made in his October 2014 complaint:

> (1) On October 15, 2014, Abrego's supervisor issued him a Letter of Inquiry regarding insubordinate behavior;
> (2) On October 15, 2014, Abrego's supervisor inspected Abrego's workspace, and;
> (3) On October 22, 2014, Abrego received a "fully satisfactory"

---

[4] Abrego has objected to the Secretary's use of excerpts from the proposed removal letter in the SUMF on the grounds that the letter lacks a proper foundation and contains hearsay.  Pl.'s Resp. to Def.'s SUMF ¶¶ 45, 26-27.  The excerpts may be considered in this context because they are not offered to prove the truth of the matter asserted, but instead to show Dr. Holt's state of mind at the time he decided to remove Abrego.  *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004).

performance rating.

*Id.*  The Office of Employment Discrimination Complaint Adjudication also construed the performance rating allegation and the removal as disparate treatment claims.  It found, however, that Abrego failed to prove he was subjected to discrimination or retaliation with respect to any of the matters he alleged.  *Id.* at 19.

Abrego filed this suit in February 2015.  His November 2015 amended complaint contains six counts and presents his claims in a somewhat confusing manner.  Counts 1 and 4 are both titled "Title VII-Race Discrimination-Hostile Environment," and Counts 2 and 5 are both characterized as "Title VII-Sex Discrimination-Hostile Environment" claims.  Counts 3 and 6 both allege retaliation and hostile workplace environment based on Abrego's protected EEO activity.  Whereas Counts 1 through 3 do not reference any particular incidents to support Abrego's discrimination, hostile workplace, and retaliation claims, Counts 4 and 5 allege the following fifteen incidents of discrimination and hostile environment, almost all of which were previously described in the October 2014 EEO complaint:

> 1. On June 4, 2014, Abrego's supervisor questioned Abrego about his whereabouts after he arrived late to work;
> 2. On June 4, 2014, Abrego's supervisor denied his request for leave in order to participate in a teleconference from home;
> 3. On June 5, July 8, July 15, and August 7, 2014, Abrego's supervisor questioned Abrego about his collateral duty assignments and monitored his whereabouts during his scheduled work hours;
> 4. On June 26, 2014, Abrego's supervisor sent him an email inquiring about his whereabouts during scheduled duty hours;
> 5. On June 30, 2014, Abrego's supervisor denied his request to take on a collateral duty teaching assignment;
> 6. On July 3, 2014, Abrego's supervisor called the Employee Health Department looking for Abrego, after he had donated blood and felt ill;
> 7. On July 10, 2014, Abrego's supervisor walked out of a meeting and subsequently indicated that her decision to leave the meeting was prompted by Abrego's demeanor;

8. On July 16, 2014, Abrego's supervisor refused to provide him with an explanation for why she had requested a meeting with him, and threatened to write him up for insubordinate behavior;

9. On July 31, 2014, Abrego's immediate and second-line supervisors told him that they wanted him to limit his collateral duty assignments;

10. On August 8, 2014, Abrego's supervisor expressed frustration when he failed to comply with her instruction to put the used linens away;

11. On August 6, 2014, Abrego's supervisor issued him a Letter of Inquiry for disrespectful conduct and for failing to timely complete job assignments;

12. On August 20, 2014, Abrego's supervisor notified Abrego that his coworkers had expressed discomfort with some of his workplace behaviors;

13. On September 30, 2014, Abrego's supervisor instructed him to notify her before leaving his duty station during scheduled work hours;

14. On October 15, 2014, Abrego's supervisor issued him a Letter of Inquiry regarding insubordinate behavior;

15. On October 15, 2014, Abrego's supervisor inspected Abrego's workspace.

Am. Compl. ¶¶ 26, 32. Count 6 alleges that Abrego's November 2014 proposed letter of removal and his December 2014 removal constituted retaliation for his prior EEO activity.

Based on the structure of the amended complaint, it appears that Abrego intended Counts 1 through 3 to incorporate the incidents alleged in his first two EEO complaints and addressed in the November 2014 final agency decision. *See* Am. Compl., Ex. A. It also appears that Abrego intended Counts 4 through 6 to incorporate the incidents alleged in the October 2014 EEO complaint and addressed in the August 2015 final agency decision. *See id.*, Ex. B. The Court thus construes Abrego's claims as follows. The race discrimination and hostile environment claims in Count 1, the sex discrimination and hostile environment claims in Count 2, and the retaliation and hostile environment claims in Count 3 are based on the incidents alleged in Abrego's August 2012 and February 2014 EEO complaints. The race discrimination and hostile

environment claims in Count 4 and the sex discrimination and hostile environment claims in Count 5 are based on the incidents alleged in the October 2014 EEO complaint. Lastly, the retaliation and hostile environment claims in Count 6 are based on the incidents alleged in the October 2014 EEO complaint, the November 2014 proposed letter of removal, and Abrego's subsequent removal in December 2014.

## Discussion

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court draws all reasonable inferences in favor of the nonmoving party. *Cole v. Bd. of Trs. of N. Illinois Univ.*, 838 F.3d 888, 895 (7th Cir. 2016). Because discrimination cases often involve questions of credibility and intent, "motions for summary judgment in discrimination cases must be decided with particular care." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir. 1996). Nonetheless, to survive summary judgment, rather than resting on the allegations or denials contained in the pleadings, the nonmoving party must set forth "specific facts" that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. Speculation is insufficient to create a genuine issue of fact. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001).

The Secretary has moved for summary judgment on all of Abrego's claims. First, the Secretary contends that Abrego did not exhaust his administrative remedies for the race discrimination and related hostile environment claims in Count 4 and the sex

discrimination claim in Count 5. With respect to the remaining race and sex discrimination claims in Counts 1 and 2, the Secretary argues that Abrego cannot establish a prima facie case. The Secretary also argues that Abrego cannot establish a prima face case of retaliation (Counts 3 and 6). Lastly, the Secretary contends that all of Abrego's hostile environment claims are deficient because he cannot show that the Lovell dental clinic was an actionable hostile work environment.

Because different substantive standards apply to Title VII discrimination, retaliation, and hostile work environment claims, the Court addresses them separately below.

## A.  Race discrimination claims (Counts 1 and 4)

Abrego alleges that he experienced race discrimination as a Hispanic dental assistant at the Lovell VA dental clinic, in violation of Title VII of the Civil Rights Act of 1964, which prohibits employers from discriminating against employees based on race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). To survive a motion for summary judgment on a Title VII race discrimination claim, a plaintiff "must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that his employer took an adverse action against him because of his race [or national origin]." *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (on a motion for summary judgment, the question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action").

As a preliminary matter, the Secretary contends that the race discrimination claim

contained in Count 4 is not properly before the Court because Abrego has not

exhausted his administrative remedies with respect to that claim.  A federal employee

must exhaust administrative remedies prior to filing suit under Title VII by filing a timely

EEO complaint with the agency.  *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir.

2013).  Once the plaintiff files suit, he "may pursue only those claims that could

reasonably be expected to grow out of the administrative charges."  *Id.* at 1099-1100.

In contrast with Abrego's August 2012 EEO complaint, in which he specifically listed

both "race" and "gender" as bases for the alleged discrimination against him, the

October 2014 EEO complaint makes no mention of race or national origin either in the

complaint form itself or in the listing of conduct that Abrego attached to it.  Def.'s SUMF,

Exs. 28, 31.  A race/national origin discrimination claim could not reasonably have been

expected to grow out the charges contained in the October 2014 complaint, and the

administrative agency did not, in fact, read the EEO complaint as making any such

claim.  *See* Am. Compl., Ex. B at 4 (characterizing the October 2014 complaint as one

of hostile workplace harassment based on gender and reprisal).  Abrego has made no

attempt to respond to the Secretary's argument that he failed to exhaust this claim.  For

this reason, the Court deems him to have waived the race discrimination claim

contained in Count 4.  *See Rabé v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 820

(N.D. Ill. 2013).

As for the race discrimination claim in Count 1, the Secretary contends that very

few of the incidents of which Abrego complains qualify as adverse employment actions

that are actionable under Title VII.  To qualify as an adverse employment action for

purposes of Title VII, the complained-of act must be a "materially adverse" change in

the terms and conditions of employment, such as a demotion accompanied by a decrease in salary, a material loss of benefits, or "significantly diminished material responsibilities." *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013). Conditions of employment that are designed to harass and humiliate an employee based on his membership in a protected class also may qualify as an adverse employment action, but only if the harassing conduct is severe or pervasive. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). For example, a "mere inconvenience or an alteration of job responsibilities" is not sufficiently disruptive to constitute a materially adverse change. *James*, 707 F.3d at 782 (citation omitted).

Out of all the allegedly discriminatory incidents that make up Abrego's Count 1 race discrimination claim, Abrego's two-week suspension without pay appears to be the only one that constitutes an actionable adverse employment action by itself. Not one of Abrego's complaints about supervisors being "short tempered" with him or otherwise criticizing his conduct describes behavior that could be considered severe or pervasive enough to constitute an actionable adverse employment action. *See, e.g.*, *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106-07 (7th Cir. 2012) (unfair criticism and personality conflicts with supervisors or coworkers are not adverse employment actions). Nor are Abrego's complaints about his less-than-glowing performance ratings actionable, because he has not provided evidence that the ratings actually harmed him in any way. *See Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (negative performance evaluations alone do not constitute an actionable adverse employment action). Although Abrego suggested in his deposition that the ratings affected his chances of receiving a bonus, *see* Abrego Dep. 199:22-200:2, he has not provided any

admissible evidence to support that assertion.

Regardless of how many of Abrego's numerous grievances actually involve materially adverse employment actions, however, his race discrimination claim fails for an even more basic reason: Abrego has not pointed to any evidence in the record from which a reasonable jury could conclude that any of the disparate treatment he alleges was based on race or national origin. Abrego attempts to contrast the two-week suspension without pay that he received for recording Dr. Bidny without permission with the VA's decision not to discipline Dr. Bidny or management assistant Henne for accessing Abrego's medical records in violation of HIPAA. *See* Def.'s SUMF, Ex. 23 at 20. Abrego also alleges, without any supporting evidence, that dental assistant Audrey Velis was treated more favorably than he on account of race when she was not disciplined after she "lost control" and cursed at a co-worker at the front desk. *Id.*

A perfect match between a plaintiff and his comparators is not required for a court to find that they are "similarly situated" for purposes of a Title VII discrimination analysis, but they need to be "similar enough to enable a meaningful comparison." *Coleman v. Donahoe*, 667 F.3d 835, 848 (7th Cir. 2012) (internal quotation marks and citations omitted). Specifically, when allegedly differential disciplinary treatment is the basis for a discrimination claim, "the most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor." *Id.* at 849 (internal quotation marks and citations omitted). Even if Abrego had the evidence necessary to support his assertions regarding Velis, Dr. Bidny, and Henne, the infraction that led to his suspension is not similar enough to their alleged misconduct to allow for a meaningful comparison. Thus there is no evidence that would permit a

reasonable juror to infer that Abrego was treated differently because of his membership in a protected class.

Instead of pointing to admissible evidence from which a reasonable factfinder could infer race discrimination, Abrego merely repeats that he *believes* he was treated differently from coworkers because of his race. *E.g.*, Pl.'s Resp. at 10 ("Plaintiff believed he was subjected to a racial and sexually hostile environment because of his race and sex."); *id.* at 11 ("Abrego was informed . . . that Dr. Fredrickson wanted Abrego out while he was on his probationary because she didn't like him, which Abrego believed was based on his race (Latino) and his sex (male)."). The only evidence Abrego cites to support these beliefs is his own deposition testimony. *See* Pl.'s Statement of Additional Undisputed Facts (PSAF) ¶¶ 1-26. And Abrego's deposition testimony, in turn, reveals that his race discrimination allegations are based on nothing more than speculation. *E.g.*, Abrego Dep. 80:6-80:22 (explaining that he believes that he was discriminated against on the basis of race when his medical records were illegally accessed because "I'm the only male Latino in that department"); *id.* at 86:18-87:2 (when asked whether he is alleging that an incident in which Dr. Strampe discouraged him from going to a medical appointment was race discrimination, Abrego responds "Yeah. Why wouldn't it be?"). Abrego's own beliefs on this score are likely inadmissible in evidence, and in any event they are insufficient to give rise to a genuine factual dispute over whether he was the victim of race discrimination. *See Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) (conclusory assertions are not evidence, and they do not help a plaintiff survive summary judgment). Because Abrego has provided no actual evidence from which a reasonable jury could infer that he was discriminated

against on the basis of race, the Secretary is entitled to summary judgment on Counts 1 and 4. *Amadio*, 238 F.3d at 927.

## B. Sex discrimination claims (Counts 2 and 5)

Abrego also alleges sex discrimination in violation of Title VII. To survive a motion for summary judgment on a Title VII sex discrimination claim, a plaintiff must produce evidence that would permit a reasonable juror to find that an adverse employment action was attributable the plaintiff's sex. *See, e.g.*, *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

First, the Secretary argues that Abrego has not exhausted his administrative remedies with respect to the sex discrimination claim contained in Count 5. Abrego's October 2014 EEO complaint did not attribute any of the events described in the complaint to sex discrimination. The Secretary contends not only that the list of claims in the October 2014 complaint contains no facts that would allow an inference of sex discrimination, but also that the subsequent investigation did not uncover a sex discrimination claim. The Secretary overlooks the fact that the VA Office of Employment Discrimination Complaint Adjudication did, in fact, treat two of Abrego's grievances as sex discrimination claims in the August 2015 final agency decision: the complaint about the "fully successful" 2014 performance evaluation and the complaint about his termination, both of which seem to have been added after Abrego filed his original October 2014 EEO complaint. Am. Compl., Ex. 2 at 4. The decision treated those two complaints both as claims of retaliation based on prior EEO activity and as sex discrimination claims. *Id.* at 14-15. But although Abrego might be able to rebut the Secretary's exhaustion argument as it pertains to the 2014 performance evaluation and

his termination, he did not address exhaustion at all in his response to the Secretary's motion. Thus, the Court finds that Abrego has waived the sex discrimination claim in Count 5. *See Rabé*, 971 F. Supp. 2d at 820.

Even if Abrego had not waived this claim, the Secretary still would be entitled to summary judgment. Abrego has not presented any evidence from which a reasonable factfinder could find that he was discriminated against because of his sex.

As was the case with the race discrimination claim in Count 1, out of all the incidents of alleged sex discrimination in Count 2, only Abrego's two-week suspension without pay constitutes a materially adverse employment action that is actionable under Title VII (the termination is not part of Count 2). Abrego has failed to identify evidence from which a reasonable jury could conclude that he suffered adverse action because of his sex. Abrego again cites the VA's decision not to suspend or otherwise discipline Velis, Henne, and Dr. Bidny for certain infractions as evidence of sex discrimination (notwithstanding the fact that Dr. Bidny, too, is male), but, as previously explained, neither situation is sufficiently comparable to Abrego's such that a reasonable juror could infer that he was treated differently because of his membership in a protected class. Abrego's additional assertion that Velis was allowed to participate in a leadership course during her probation period is likewise inapposite because he points to no evidence that he attempted to participate in a similar course but was denied the opportunity to do so. Def.'s SUMF, Ex. 23 at 19. Abrego also has suggested—without providing evidence—that female dental assistants Agado, Anderson, and Thomas received more favorable performance evaluations and bonuses. *Id.* This bare assertion does not permit a reasonable juror to infer, by comparison, that Abrego was treated

differently because he is male. Abrego points to no other evidence of sex discrimination, aside from his own deposition testimony regarding his belief that he was treated less favorably than the female dental assistants in the clinic. *E.g.*, Abrego Dep. 41:25-42:7 (Abrego states that Dr. Fredrickson "wanted [him] out" because he was the only male civilian Latino and that "[e]very female there" was treated differently than he was). But as noted earlier, Abrego's unsupported beliefs are not evidence that would sustain a claim of discrimination. For these reasons, the Secretary is entitled to summary judgment on Counts 2 and 5.

## C.    Retaliation claims (Counts 3 and 6)

Abrego alleges that he experienced unlawful retaliation after he began filing EEO complaints. He also alleges a hostile work environment based on retaliation, which the Court addresses in Section D of this opinion along with the other hostile work environment claims. The Secretary contends that summary judgment is warranted on Abrego's retaliation claims because cannot show a causal relationship between his prior EEO activity and adverse employment action. To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that (1) he engaged in a statutorily protected activity; (2) his employer took a materially adverse action against him; and (3) there is a but-for causal connection between the protected activity and the materially adverse action. *Nicholson v. City of Peoria*, 860 F.3d 520, 523 (7th Cir. 2017); *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). For purposes of a Title VII retaliation action, a materially adverse action need not affect the terms and conditions of employment, but it must be "one that a reasonable employee would find to be materially

adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (citation omitted). The anti-retaliation provision does not "protect against petty slights, minor annoyances, [or] bad manners." *Boss*, 816 F.3d at 918.

There is no dispute that Abrego engaged in protected activity by filing EEO discrimination complaints. Of the numerous employment actions of which Abrego complains, only the two-week suspension and Abrego's ultimate removal constitute materially adverse employment actions that would dissuade a reasonable employee from engaging in protected activity. Although Abrego also alleges in his deposition that Dr. Bidny urged him to drop his complaint in 2012, there is no basis to believe that a request of this sort is enough to deter a reasonable employee from pursuing an EEO complaint (it certainly did not deter Abrego).

Because Abrego has no direct evidence of a causal link between his suspension or removal and his EEO complaints, he must rely on circumstantial evidence such as "suspicious timing, ambiguous statements, treatment of similarly-situated employees, and any other relevant information that could permit an inference of retaliation." *Burton*, 851 F.3d at 697. Employment actions that are not by themselves materially adverse nonetheless may serve as circumstantial evidence of a retaliatory motive. *Id.* With respect to timing, the mere passage of time between the protected act and the materially adverse employment action does not preclude the possibility of a retaliatory motive. *Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014). On the other hand, in the absence of other corroborating evidence, temporal proximity is rarely enough to establish a causal link between the two. *O'Leary v. Accretive Health, Inc.*, 657 F.3d

625, 635 (7th Cir. 2011); *Lang v. Illinois Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004). In *O'Leary*, for example, the Seventh Circuit held that an employee's discharge within 60 days of expressing concerns about racial harassment was insufficient evidence of causation. *O'Leary*, 657 F.3d at 635.

Abrego's suspension took place in January 2014. According to Abrego's deposition testimony, the recording for which he was suspended was made over two years earlier during an August 16, 2011 conversation with Dr. Bidny. Abrego Dep. 153:19-153:23. Because neither Abrego nor the Secretary addresses this point, the Court has no way of knowing the reason for this large gap in time. What the Court does know is that, at the time of the suspension, Abrego's only prior EEO activity was the filing of his first EEO complaint back in August 2012. Of all the complained-of incidents that do not rise to the level of materially adverse actions, the allegation that Dr. Bidny urged Abrego to drop his EEO complaint is the only one that might serve as evidence of a retaliatory motive, but that allegedly happened in 2012, long before the suspension took place. No reasonable jury could find a causal link between the August 2012 EEO complaint and Abrego's 2014 suspension based solely on that evidence, and none of the other alleged incidents support an inference of retaliation.

There is a much smaller gap in time between Abrego's last EEO complaint, which he filed on October 3, 2014, and the issuance of the November 19, 2014 letter notifying Abrego of his proposed removal. The seven-week interval, however, is insufficient by itself to permit a reasonable jury to find a causal connection between the two events. And aside from the invoking the same flawed comparisons that the Court has discussed between himself and Velis, Dr. Bidny, and Henne, Abrego points to no additional

evidence that would permit a reasonable jury to infer a causal link between his removal

and past or ongoing EEO activity.  Instead, Abrego merely asserts his belief that "many

issues of discipline in his employment files were fabricated" without pointing to any

evidence of such fabrication.[5]  Pl.'s Resp. at 10.  Abrego's retaliation claims therefore

cannot survive summary judgment.

## D.    Hostile work environment claims (Counts 1 through 6)

Abrego also has alleged hostile work environment claims based on race (Counts

1 and 4), sex (Counts 2 and 5), and prior EEO activity (Counts 3 and 6).  Title VII

prohibits employers from requiring its employees to work in an environment that is

discriminatorily hostile or abusive.  *Boss*, 816 F.3d at 920.

The Secretary contends that Abrego has failed to exhaust his administrative

remedies with respect to the Count 4 claim of hostile work environment claim based on

race.  The Court dismisses the Count 4 hostile work environment claim for the same

reasons that it dismisses the race discrimination claim in Count 4, as discussed in

Section A of this opinion.

The Secretary further argues that summary judgment is warranted on the

remaining hostile work environment claims because Abrego cannot establish that the

VA dental clinic was an actionable hostile work environment.  To survive summary

judgment on a hostile work environment claim, a plaintiff must introduce "sufficient

evidence demonstrating (1) the work environment was both objectively and subjectively

offensive; (2) the harassment was based on membership in a protected class or in

---

[5] Abrego's response to the November 19, 2014 letter of proposed removal includes a
letter to Dr. Holt, purportedly written by a Dr. Lepianka, that disavows a charge that
Abrego failed to set up his dental operatory on August 5, 2014.  Def.'s SUMF, Ex. 25 at
19.  Dr. Holt did not sustain that charge against Abrego.  *See* Def.'s SUMF, Ex. 26 at 1.

retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Id.* Courts consider the totality of the circumstances when evaluating hostile work environment claims. *Id.* Factors to consider include "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.*

Several of Abrego's complaints involve incidents in which his supervisors were "short tempered" or critical of him. Many of his other complaints have to do with his perception that supervisors excessively monitored his whereabouts and volunteer activities during work hours. Even if such an environment was subjectively offensive to Abrego, and even if it could be said to have interfered with his work performance, it would be hard to call the interference unreasonable, and none of the complained-of conduct was physically threatening or humiliating. Simply put, the workplace incidents of which Abrego has complained, even when taken all together, fall far short of creating a work environment that a reasonable juror could find to be objectively offensive, severe, or pervasive. *See, e.g.*, *id.* at 920-21 (no hostile work environment where plaintiff complained about being marked absent without leave, criticized for not attending a teleconference, being required to come to work on his telework day, and having his midyear evaluation changed from "highly" to "fully" successful). Moreover, as previously explained, Abrego has presented no evidence from which a reasonable factfinder could infer that any of the alleged harassment was based on his race, sex, or prior EEO activity. The Court therefore finds that summary judgment is warranted on the hostile environment claims as well.

## Conclusion

For the foregoing reasons, the Court grants the Secretary's motion for summary judgment [dkt. no. 32] and directs the Clerk to enter judgment in favor of the defendant and against the plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 24, 2017